UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION – COLUMBUS

| | |
|---|---|
| **DR. JEROME AUL** <br> 2366 Hudson Hill Rd. <br> Weirton, WV 26062 <br><br> PLAINTIFF, <br><br> -VS- <br><br> **GENESIS HEALTHCARE SYSTEM** <br> c/o Wendy Cedoz <br> 2951 Maple Ave <br> Zanesville, OH 43701 <br><br> and, <br><br> **WEATHERBY LOCUMS, INC.** <br> 6451 North Federal Highway, Suite 700 <br> Ft. Lauderdale, FL 33308 <br><br> DEFENDANTS. | Case No: 2:25-cv-00648 <br><br> Judge: |

## COMPLAINT WITH JURY DEMAND

Dr. Jerome Aul states the following for his Complaint against Genesis Healthcare System and Weatherby Locums, Inc.:

### INTRODUCTION

1. This action arises from discriminatory and retaliatory conduct by Defendants Genesis HealthCare and Weatherby Locums against a physician who did nothing wrong, except ask to practice medicine in line with his faith. Dr. Jerome Aul is a board-certified anesthesiologist and a devout Catholic. He made clear from the start that his religious beliefs prevent him from participating in sterilization procedures. Both Defendants assured him those beliefs would be accommodated. But just days after he

1

reminded his supervisor of that agreement, Defendants abruptly ended his assignment and refused to provide any explanation. Rather than support him, Weatherby suspended him, blocked future job opportunities, and demanded tens of thousands of dollars to release him from a contract. Dr. Aul brings this action for religious discrimination, retaliation, and breach of contract. The events giving rise to this lawsuit occurred in Ohio, and venue is proper in this District.

## PARTIES

2.  Plaintiff Dr. Jerome J. Aul ("Dr. Aul") is a board-certified anesthesiologist and a practicing Catholic. He resides in Texas but worked in Zanesville, Ohio, under contract with Weatherby Locums, Inc., at Genesis HealthCare. He was terminated shortly after requesting a religious accommodation in Ohio.

3.  Defendant Genesis HealthCare System ("Genesis") is a healthcare provider headquartered in Zanesville, Ohio. It operates hospitals and medical facilities throughout the region and employed or supervised Dr. Aul during the events giving rise to this case.

4.  Defendant Weatherby Locums, Inc. ("Weatherby") is a Florida corporation with its principal place of business in Fort Lauderdale, Florida. Weatherby provides locum tenens medical staffing services across the United States, including Ohio, and contracted with Dr. Aul to assign him to various medical facilities.

5.  Both Genesis and Weatherby were joint employers of Dr. Aul. Genesis exercised day-to-day control over Dr. Aul's work, including supervision, patient assignments, and termination. Weatherby maintained contractual authority over Dr. Aul's assignments, payroll, and post-termination status. Together, they shared control over the essential terms and conditions of his employment.

6. Both Genesis and Weatherby are "employers" under Title VII of the Civil Rights Act of 1964, as each employs more than fifteen employees for each working day in each of twenty or more calendar weeks during the relevant time period. Each Defendant had the power to affect the terms, conditions, and continuation of Dr. Aul's employment.

7. Genesis and Weatherby acted in concert to discriminate and retaliate against Dr. Aul. Genesis removed him from the assignment without cause shortly after he requested a religious accommodation. Weatherby ratified that decision by suspending him, refusing to provide any explanation, and preventing him from securing comparable work elsewhere—all within a matter of days. These coordinated actions form the basis for joint employer liability under Title VII and related claims.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to hear this case under 28 U.S.C. § 1331 because Dr. Aul asserts claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII").

9. Dr. Aul also states claims under the laws of the state of Ohio. These claims are inherently related to the other claims in this case, over which this Court has original jurisdiction, that they are a part of the same case or controversy under Article III of the United States Constitution. Accordingly, this Court has supplemental jurisdiction of these claims under 28 U.S.C. § 1367.

10. Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District. Specifically, Plaintiff was assigned to work at Genesis HealthCare in Zanesville, Ohio, where he was terminated. The discriminatory conduct, retaliation, and resulting harm all occurred within this District.

**BACKGROUND FACTS**

11. Dr. Jerome Aul is a board-certified anesthesiologist and a practicing Catholic.

12. His religious beliefs prohibit him from participating in certain medical procedures, including elective sterilizations and any procedure that intentionally renders a patient infertile.

13. These beliefs are not new or situational.

14. They are long-standing, sincere, and rooted in Catholic doctrine.

15. The Catechism of the Catholic Church teaches that direct sterilization, whether of the man or of the woman, whether permanent or temporary, is to be absolutely excluded as lawful means of regulating birth. Dr. Aul has consistently lived in accordance with these beliefs throughout his medical career.

16. In January 2023, Dr. Aul entered a contract with Defendant Weatherby Locums, Inc., a staffing agency that assigns physicians to medical facilities across the United States.

17. As part of the onboarding process, Dr. Aul clearly communicated his religious beliefs and accommodation needs.

18. He informed Weatherby that he could not, consistent with his faith, participate in procedures that intentionally cause sterilization.

19. Weatherby assured Dr. Aul that his beliefs would be respected and that he would not be placed in assignments that required him to violate his faith.

20. These representations were critical to his decision to sign the contract.

21. Prior to his assignment in Ohio, Weatherby placed Dr. Aul at Christus Santa Rosa in Texas and Gundersen Health System in Wisconsin.

22. At Christus, his religious accommodation was honored without issue.

23. At Gundersen, however, he was assigned to objectionable procedures and protested.

24. Shortly after raising concerns, he received a negative performance review and was pulled from the assignment. Weatherby then suspended him without explanation.

25. In November 2023, Weatherby offered Dr. Aul a new placement at Genesis HealthCare in Zanesville, Ohio.

26. Dr. Aul again stated his need for a religious accommodation, and Weatherby confirmed that it would be honored. Relying on that assurance, Dr. Aul accepted the assignment and began work at Genesis on December 1, 2023.

27. During orientation, Dr. Aul met with Dr. Xiaobo Dong, the supervising anesthesiologist.

28. Dr. Aul reiterated his religious accommodation and explained that he could not be assigned to sterilization cases.

29. Dr. Dong responded that such cases were rare and told Dr. Aul, "You will never be assigned one."

30. On December 5, 2023, just four days into the assignment, Dr. Aul was scheduled for a procedure that he understood to involve elective sterilization.

31. He respectfully requested not to be assigned to the case, citing his religious accommodation.

32. The assignment was immediately reassigned without disruption to the schedule or burden to any patient.

5

33. The requested accommodation did not interfere with patient care, did not cause delay, and was easily implemented by shifting the case to another anesthesiologist already on site.

34. Genesis had multiple anesthesiologists available and had no trouble adjusting the assignment.

35. Later that day, Dr. Dong questioned Dr. Aul again about his refusal to perform certain procedures and whether he was willing to work weekends, an issue that had not been previously discussed.

36. The next morning, on December 6, 2023, Dr. Aul was summoned to a meeting with operating room administrator Paul Tedrick.

37. Without warning, he was informed that his assignment was terminated due to vague "clinical concerns."

38. No documentation or examples were provided, and Dr. Aul was given no opportunity to respond.

39. After the termination, Dr. Aul contacted Weatherby for support.

40. Rather than advocate on his behalf or request clarification from Genesis, Weatherby suspended him from further assignments and refused to provide any explanation.

41. When Dr. Aul secured interest from another medical facility, one that aligned with his religious views, Weatherby demanded over $85,000 as a fee to release him from the contract, effectively blocking him from accepting the job.

42. Dr. Aul received no write-up, no warning, and no record of any performance issues prior to being terminated.

43. Genesis and Weatherby jointly controlled Dr. Aul's employment.

44. Genesis supervised his day-to-day work, controlled the operating room assignments, and initiated the termination.

45. Weatherby placed him at Genesis, collected his time records, handled payroll, managed his employment status, and made the decision to suspend him and prevent future placements.

46. The abrupt termination occurred less than 24 hours after Dr. Aul requested to be exempted from a single procedure on religious grounds.

47. The timing, lack of justification, and coordinated response between Genesis and Weatherby strongly suggest that the termination was retaliatory and discriminatory.

48. Defendants cannot show that accommodating Dr. Aul's beliefs created an undue hardship.

49. The requested accommodation caused no delay, no cost, and no interference with patient care.

50. Other anesthesiologists were available and reassignment was handled seamlessly.

51. There was no legitimate reason to terminate him.

52. Defendants' actions have caused Dr. Aul financial hardship, reputational harm, and ongoing professional disruption. He has struggled to secure new assignments, has had to accept significantly reduced pay, and continues to suffer from the effects of being unjustly labeled as a problem physician.

7

## **CLAIMS**

### **COUNT I**
### **RELIGIOUS DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

53. Dr. Aul restates and incorporates all paragraphs.

54. Title VII prohibits employers from discriminating against an employee because of their religion. This includes the duty to reasonably accommodate an employee's sincerely held religious beliefs, unless doing so would impose an undue hardship on the employer's business.

55. At all relevant times, Plaintiff Dr. Jerome Aul held sincere and long-standing religious beliefs that prevented him from participating in medical procedures that cause sterilization.

56. These beliefs are grounded in Catholic doctrine and have consistently guided his professional conduct.

57. Plaintiff clearly communicated these beliefs to Defendants before accepting the assignment at Genesis HealthCare.

58. Defendants acknowledged his accommodation request and assured him it would be honored.

59. Just days into the assignment, Plaintiff was scheduled for a procedure that involved sterilization.

60. He respectfully declined to participate and requested reassignment in line with the religious accommodation already granted.

61. The procedure was reassigned without issue or delay.

62. There was no disruption to the operating room schedule, no burden placed on Defendants, and no impact on patient care.

63. Less than 24 hours after requesting that accommodation, Plaintiff was terminated from his assignment without explanation.

64. Weatherby then suspended him from future placements and later demanded over $85,000 to release him from the contract.

65. Defendants' actions constitute religious discrimination under Title VII. They terminated Plaintiff and blocked him from future work because of his religious beliefs and his request for a reasonable accommodation.

66. Defendants cannot show that accommodating Plaintiff's beliefs would have caused more than a minimal burden. The reassignment was seamless, and no legitimate reason has been given for his termination.

67. As a result of Defendants' unlawful actions, Plaintiff has suffered loss of income, reputational harm, emotional distress, and diminished job prospects.

68. Plaintiff seeks all available relief under Title VII, including back pay, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT II
## RETALIATION UNDER
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

69. Dr. Aul restates and incorporates all paragraphs.

70. Title VII prohibits employers from retaliating against an employee because the employee engaged in protected activity, including requesting a religious accommodation.

71. Plaintiff engaged in protected activity when he informed Defendants of his religious beliefs and requested not to be assigned to sterilization procedures.

72. This request was made in good faith and was consistent with the religious accommodation previously acknowledged and approved by both Defendants.

73. Less than 24 hours after requesting to be reassigned from a single procedure due to his religious beliefs, Plaintiff was terminated from his assignment at Genesis HealthCare.

74. Weatherby immediately followed by suspending Plaintiff from all future assignments and later demanded a financial penalty exceeding $85,000 to release him from his contract, effectively blacklisting him from further employment.

75. These adverse actions were taken in close temporal proximity to Plaintiff's protected conduct and were not based on any documented performance or behavioral issue.

76. Defendants' stated reasons for Plaintiff's termination—if any are offered—are pretextual. There were no clinical complaints, disciplinary records, or performance issues. The only material change in circumstances was Plaintiff's religious accommodation request.

10

77. Defendants retaliated against Plaintiff for exercising his rights under Title VII by terminating his assignment, suspending him, and interfering with future job opportunities.

78. As a result, Plaintiff has suffered lost wages, loss of career opportunities, reputational damage, emotional distress, and other compensable harm.

79. Plaintiff seeks all available relief under Title VII, including back pay, front pay, compensatory damages, punitive damages, and attorney's fees and costs.

## COUNT III
## RELIGIOUS DISCRIMINATION
## VIOLATION OF OHIO REV. CODE § 4112.02

80. Dr. Aul restates and incorporates all paragraphs.

81. Ohio Revised Code § 4112.02(A) makes it unlawful for any employer to discharge, refuse to hire, or otherwise discriminate against any person with respect to hire, tenure, terms, conditions, or privileges of employment because of that person's religion.

82. At all relevant times, Plaintiff held sincere religious beliefs that prohibited him from participating in sterilization procedures.

83. He informed both Defendants of these beliefs and requested a reasonable accommodation prior to and during his employment assignment in Zanesville, Ohio.

84. Plaintiff's beliefs are rooted in long-standing Catholic doctrine and have been consistently held and communicated throughout his medical career.

85. Defendants initially agreed to accommodate Plaintiff's beliefs. However, within days of him requesting reassignment from a procedure that violated his religious

tenets, he was abruptly terminated from the assignment by Genesis and suspended from future placements by Weatherby.

86. The accommodation Plaintiff requested did not create an undue hardship. The procedure was easily reassigned, there was no disruption to workflow, and no patient care was affected.

87. Defendants' adverse actions were motivated by Plaintiff's religious beliefs and his request for accommodation.

88. The stated basis for his termination "clinical concerns" was vague, unsupported, and not based on any prior documented issues.

89. As a result of this discriminatory treatment, Plaintiff has suffered economic harm, emotional distress, reputational damage, and loss of future job opportunities.

90. Plaintiff seeks all relief available under Ohio law, including reinstatement or front pay, back pay, compensatory damages, punitive damages, costs, attorney's fees, and any other appropriate relief.

## COUNT IV
## RETALIATION
## VIOLATION OF OHIO REV. CODE § 4112.02

91. Dr. Aul restates and incorporates all paragraphs.

92. Ohio Rev. Code § 4112.02(I) prohibits an employer from retaliating against any person because they have opposed any unlawful discriminatory practice or made a request related to religious accommodation.

93. Plaintiff engaged in protected activity when he requested not to be assigned to a sterilization procedure based on his sincerely held Catholic beliefs.

12

94. This request was made directly to Genesis and followed the accommodation previously acknowledged by Weatherby.

95. Plaintiff's request was reasonable, made in good faith, and consistent with his religious convictions and the representations made by both Defendants when the assignment was offered.

96. Within 24 hours of this request, Genesis terminated Plaintiff's assignment without explanation.

97. Weatherby then suspended Plaintiff, refused to place him on future assignments, and demanded an $85,000 fee to release him from his contract—effectively punishing him for asserting his rights.

98. These adverse actions were not based on job performance, safety concerns, or patient care.

99. Plaintiff received no written warning, performance critique, or clinical complaint.

100. Defendants' responses were disproportionate, retaliatory, and unsupported by any documentation.

101. The sequence and timing of events strongly support a causal connection between Plaintiff's protected activity and the adverse actions taken against him.

102. As a result of Defendants' retaliation, Plaintiff has suffered lost wages, reputational damage, emotional distress, and reduced opportunities for future employment.

103. Plaintiff seeks all remedies available under Ohio law, including back pay, front pay, compensatory damages, punitive damages, costs, attorney's fees, and all other appropriate relief.

## COUNT V
## BREACH OF CONTRACT
## AGAINST DEFENDANT WEATHERBY LOCUMS, INC.

104. Dr. Aul restates and incorporates all paragraphs.

105. Plaintiff and Weatherby Locums, Inc. entered into a valid and enforceable written agreement under which Plaintiff agreed to accept medical assignments through Weatherby, and Weatherby agreed to assign him to work at medical facilities and compensate him accordingly. (**Exhibit A**).

106. The contract provided for a specific assignment with Genesis HealthCare in Zanesville, Ohio, beginning on or about December 1, 2023, and continuing through a defined term, subject to renewal or modification.

107. The contract did not allow for termination without cause or without notice and opportunity to cure any alleged issue.

108. Plaintiff fulfilled all his contractual obligations. He timely appeared for the assignment, complied with all onboarding procedures, and performed his duties as an anesthesiologist competently and professionally.

109. Plaintiff was terminated from the Genesis assignment less than 24 hours after requesting a religious accommodation.

110. Weatherby immediately suspended him from future assignments, failed to provide any explanation or due process, and then demanded more than $85,000 to release him from the contract—effectively preventing him from working elsewhere.

111. These actions violated both the express terms of the agreement and the covenant of good faith and fair dealing.

112. Weatherby made no finding of misconduct, issued no warning, and did not follow any contractual procedure for discipline or termination.

113. Plaintiff was never notified of any alleged breach of the agreement and was given no opportunity to cure.

114. Instead, he was blocked from completing the agreed-upon term without any justification.

115. By suspending Plaintiff, preventing reassignment, and demanding a penalty to release him from future work, Weatherby materially breached the contract.

116. As a direct result of Weatherby's breach, Plaintiff has suffered lost wages, delay in securing replacement work, harm to his professional reputation, and other damages.

117. Plaintiff seeks all damages resulting from Weatherby's breach, including lost income for the contract term, consequential damages, and any other relief the Court deems appropriate.

**WHEREFORE**, Dr. Aul respectfully requests that this Court find for him and award him the following:

    a. Compensatory damages;

    b. Reinstatement;

    c. Lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions;

    d. Statutory damages;

    e. Interest;

    f. Punitive damages;

    g. Attorney fees;

    h. Costs;

    i. Litigation expenses; and

    j. All other relief this Court deems proper.

Respectfully Submitted,

**/s/ Robert L. Thompson**
Robert L. Thompson (OH: 98126)
THOMPSON LEGAL LLC
250 E. Fifth St. 15th Floor
Cincinnati, OH 45202
T: (513) 780-5985
F: (513) 780-8988
robert@rthompsonlegal.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all triable issues.

**/s/ Robert L. Thompson**
Robert L. Thompson